## Richmond.

# W. H. WOOD v. ATLANTIC COAST REALTY COMPANY.

### January 18, 1923.

1. EVIDENCE—*Materiality—Real Estate Brokers—Action Against Broker on Contract to Sell Land—Evidence That Legal Title to the Land Was Not in the Name of the Plaintiff—Impeachment of Witness—Case at Bar.*—In an action against a realty company to recover damages for the breach of a contract to sell certain real estate, evidence was admitted over objection of plaintiff to show that the legal title to the tract of land covered by the contract was in the name of another than plaintiff. The defendant claimed an interest in the land which remained unsold and which stood in the name of this other. It was necessary to put all the facts in evidence to enable the jury to pass intelligently on plaintiff's liability upon this claim, and thus the testimony was responsive to one of the issues in the case. Moreover, plaintiff represented the land to be his own and called it his farm in the contract, and the evidence was therefore admissible as bearing on the credibility of his testimony as a witness in the case.

2. APPEAL AND ERROR—*Error in Instructions—Instructions Presenting Every Theory of Appellant.*—Where the instructions granted presented every theory supported by the evidence for the appellant and fully guarded his rights, and the jury was fairly and fully instructed as to the law of the case, and the Supreme Court of Appeals could find no error of which the appellant could complain, there was no merit in an assignment of error to the action of the trial court in granting and refusing instructions.

3. NEW TRIALS—*Real Estate Brokers—Action on Contract to Sell Land—Evidence Sufficient to Support the Verdict.*—In the instant case, an action against a real estate company to recover damages for breach of a contract to sell certain real estate, the case turned upon the question of whether it was the fault of the plaintiff or the company that a mortgage on the land in question was not released. There was evidence to support the contention of each of the parties upon this point, and the jury was properly instructed upon the question.

*Held:* That all the questions arising out of this conflict in the evidence were fairly submitted to the jury, and that their verdict was therefore conclusive of the facts, and could not be disturbed on appeal.

Error to a judgment of the Circuit Court of Lunenburg county. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Geo. E. Allen,* for the plaintiff in error.

*Hudgins & Ozlin,* for the defendant in error.

West, J., delivered the opinion of the court.

This suit was instituted by W. H. Wood against the Atlantic Coast Realty Company, hereafter called the Company, to recover damages for the breach of a contract to sell certain real estate. There was a verdict and judgment for the company. To that judgment Wood was awarded this writ of error.

The business of the company was to subdivide and sell real estate. On July 9, 1918, Wood entered into a written contract with the company to subdivide and sell by public auction 1,003 acres of land in Lunenburg county. The terms of the sale were to be fifteen per cent cash and the balance as follows: "Fifteen per cent January 1, 1919, and the remainder in one, two, three and four years from January 1, 1919, with interest from January 1, 1919, on deferred payments, evidenced by notes, and secured by deeds of trust on the property."

Under the terms of the contract the money derived from the sale was to be divided between Wood and the company as follows: The first $16,000 to Wood; the next $700 to the Company; and the next $500 to Wood, to reimburse him for the roadway which he agreed to build across the property. Of any amount realized in

excess of $17,200, Wood was to receive twenty-five per cent and the company seventy-five per cent, and for each $1,000 of profit received by the company Wood was to receive $200.

By the contract the company agreed to subdivide the land in harmony with Wood's wishes, thoroughly advertise the sale, furnish auctioneers, assistants, etc., and do. all possible to make the sale a success; and also to prepare all deeds, deeds of trust and other papers without cost to Wood. Wood agreed to make good and sufficient deeds to the purchasers.

The sale under the contract was held July 21, 1919, at which about 700 acres of the land were knocked down to five purchasers at prices aggregating $19,499.-61; and 375 acres, worth at least $15 per acre, were left unsold. Only one purchaser, McLaughlin, was able to comply with the terms of the sale. He paid $700 cash, accepted a deed and executed his notes for the deferred payments and a deed of trust to secure the same, and paid the first deferred payment of $523.23 when due. As to the other purchasers, it was agreed between Wood and the company that the cash payments might be evidenced by short time, chattel mortgage notes, payable January 1, 1920, secured by personal property, including growing crops. Pursuant to this special agreement, the other purchasers complied with the terms of the sale and all the trust deeds and notes were executed and delivered, with the cash, to the company. The purchasers were people who resided near the property and were known to and approved by Wood.

On the day of the sale, just before the property was offered, it developed that the 1,003 acres of land did not stand in the name of Wood and that it was mortgaged to secure a debt of $9,000, or $10,000. The people present being disturbed by this information, the com-

pany, with Wood's approval, announced that all money paid and all papers given by the purchasers would be held in escrow by the company until the mortgage was removed. Wood also assured the company and those present that he had other property with which he could and would lift the mortgage.

The plaintiff claimed damages in the sum of $4,000 with interest from January 1, 1920. Under its answer and special pleas, the company claimed Wood was indebted to it in the sum of $1,650 to cover the amount expended in preparing for, advertising and conducting the sale; in the sum of $700 with interest from July 11, 1919; for money advanced him by the company, for which it held his note, in the sum of $6,000 for his interest in the unsold land; in the sum of $6,000 for standing timber cut and removed from the land by Wood between the date of the contract and the date of the sale; and in the further sum of $4,800 damages resulting from the failure of Wood to remove the mortgage from the land sold. The jury returned a verdict for the defendant in the sum of $1,432.35.

The plaintiff relies on five assignments of error.

[1] The fourth and fifth assignments allege that the court erred in admitting evidence to show that the legal title to the tract of land covered by the contract was in the name of Mrs. S. A. Hunter. This testimony was responsive to one of the issues in the case. The defendant claimed an interest in the 375 acres which remained unsold and stood in the name of Mrs. Hunter. It was necessary to put all the facts in evidence to enable the jury to pass intelligently on Wood's liability upon this claim. Besides, Wood had represented the farm to be his own and had called it the "Wood farm" in the contract, and the evidence objected to was admissible as bearing on the credibility of his testimony as a witness in the case.

These assignments are without merit.

[2] The second and third assignments relate to the action of the court in granting and refusing instructions.

The court granted seven instructions at the request of the plaintiff and a like number at the request of the defendant; and refused to give instructions A and B offered by the plaintiff.

The instructions granted presented every theory supported by the evidence for the plaintiff and fully guarded his rights. The jury was fairly and fully instructed as to the law of the case and we find no error of which the plaintiff can complain.

[3] This brings us to the last assignment of error, based upon the action of the court in refusing to set aside the verdict as contrary to the law and the evidence and without evidence to support it.

The evidence was voluminous and conflicting, but, in our view of the case, it is unnecessary to discuss it further, in detail.

There can be no question that if all the purchasers at the sale, held on July 21, 1919, had complied with the terms and paid their cash and deferred payments as they fell due, the plaintiff would have no cause for complaint. Out of the aggregate amount of the sales, $19,499.61, the plaintiff would have received the first $16,000, the company the next $700 and the plaintiff the next $500. Of the remaining $2,299.61 the plaintiff would have received $574.90 and the company $1,724.71.

As stated by the plaintiff, the case turned upon the question: Whose fault was it that the mortgage was not released?

The plaintiff contends that the failure of the parties to comply was due to the failure of the company to record the chattel mortgage notes and to deliver $10,000

of the cash and deferred payment notes to the Banking Trust and Mortgage Company of Petersburg, Virginia, in satisfaction of the mortgage held by it against the property. The company contends that under the agreement entered into with the purchasers, with Wood's approval on the day of the sale, it was its duty to hold the cash and all the papers until the mortgage was removed by Wood. On this question, the jury were properly instructed as follows:

(7.)

"The court instructs the jury that if they believe from the evidence that it was understood by the defendant before sale that the said mortgage was to be taken care of by the application of the purchase money upon said sale; that the defendant refused to make the proper application of the purchase money and notes, and as a direct result thereof such delay was experienced in lifting said mortgage as to discharge the purchasers to such an extent as to cause them to fail and refuse to carry out their purchases, the jury will find for the plaintiff for any and all losses which are directly traceable to the action of the defendant in refusing to deliver said cash payments and said notes to the Banking Trust and Mortgage Company, for the purpose of lifting said mortgage."

(10.)

"The court instructs the jury that if they believe from the evidence in this cause that at the time of the sale of the Wood farm, as made by the Atlantic Coast Realty Company, there was a mortgage, deed of trust or other liens on the property described in the contract here declared on, and that the Atlantic Coast Realty

Company announced at the time of the sale that the cash, and notes of the purchasers on the property then proposed to be offered for sale, would be held in escrow until the mortgage, deed of trust or other lien was released, then it was the duty of W. H. Wood to release, or cause to be released, such lien within a reasonable time, after the date of sale."

(11.)

"The court further instructs the jury that if they believe from the evidence in this cause, that there was a promise, or announcement on the part of the Atlantic Coast Realty Company, on the day of the sale to hold the cash and notes in escrow as set forth in instruction No. 3, and that the said W. H. Wood did not release, or cause to be released, within a reasonable time, after sale, which failure on the part of W. H. Wood was the cause of the refusal of the various purchasers at the said sale to complete their purchases, then the defendant company is entitled to recover of W. H. Wood, in this proceeding, its compensation on the sale made July 21, 1919, as set forth in instruction No. 1 under the contracts here declared on."

(13.)

"The court instructs the jury that if they believe from the evidence that Albert and Nelson Ellis, Henry Smith, John McFarland, G. A. Carter and W. C. McLaughlin purchased parts of said farm in good faith, and were accepted as such by W. H. Wood, and failed to complete their purchases through no fault of the Atlantic Coast Realty Company, but because W. H. Wood failed to release the lien binding on said land,

after a reasonable time, then the Atlantic Coast Realty Company is entitled to recover of the plaintiff, W. H. Wood, the amount of its compensation, as set forth in said contract."

(14.)

"The court instructs the jury that if they believe from the evidence that it was agreed that the Atlantic Coast Realty Company was to hold in escrow the cash, notes and other papers executed as evidence of the deferred payments for the parcels of land sold, until the title to said land was clear, then the Atlantic Coast Realty Company had no right to surrender said cash, notes or other papers to W. H. Wood, or anyone else, until it was satisfied the title was clear, unless surrendered by mutual request of W. H. Wood and the purchaser."

There was evidence to support the contention of each of the parties, and upon which to base the foregoing instructions. Had the jury given credence to the testimony for the plaintiff their verdict would doubtless have been in his favor; but believing the testimony of the company, they found against him.

Wood failed to remove the mortgage, and as late as December 23, 1919, requested the company to turn the cash and notes over to him, instead of to the Banking Trust and Mortgage Company. The cash and all the papers remained in the possession of the company for more than ten months, during which time several of the purchasers, who had waited a reasonable time for the mortgage to be removed, declared their inability and unwillingness to pay, and, with the consent of the plaintiff and of the company, executed deeds reconveying the property to the owner. The contract was, by consent, modified from time to time to meet the conditions

arising after the sale, and finally Wood's client, Mrs. Hunter, got back all the land with the $700 road improvement thereon, and Wood got back a small tract which stood in his own name. The jury only allowed the company the $700 expended in road building and about one-half of the amount actually expended by it in endeavoring to carry out the contract on its part.

All questions arising out of the conflict in the evidence were fairly submitted to the jury, their verdict is conclusive of the facts, and we cannot disturb it.

The parties had a fair trial on the merits and we cannot say the judgment is plainly wrong, or without evidence to support it, and it must be affirmed.

*Affirmed.*